

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KENNETH LIPSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 07 C 2584 |
| v. ) | |
| ) | Judge Ruben Castillo |
| UNITED PARCEL SERVICE, INC. ) | |
| and TEAMSTERS LOCAL UNION 705 ) | |
| OF ILLINOIS, INC., ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION AND ORDER

Kenneth Lipsey ("Plaintiff") brings this *pro se* action against United Parcel Service, Inc. ("UPS") and Teamsters Local Union 705 of Illinois, Inc. ("Local 705") (collectively "Defendants"). Plaintiff alleges that he was wrongfully terminated by UPS and that the Union breached its duty of fair representation in violation of Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.[1] (R. 61, Second Am. Compl.) Presently before the Court are Defendants' motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). (R. 93, Local 705's Mot. for Summ. J.; R. 97, UPS's Mot. for Summ. J.) For the reasons stated below, the motions are granted.

---

[1] Although Plaintiff specified his suit as a Section 301 LMRA action in his original complaint, he neglected to indicate the statute under which he seeks to recover in the second amended complaint. (*See* R. 6, Compl.; R. 61, Second Am. Compl.) However it is clear from the face of the complaint that the alleged claims of wrongful termination and breach of duty of fair representation represent a hybrid Section 301 LMRA violation. *See Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) ("[W]e construe *pro se* complaints liberally and hold them to a less strict standard than formal pleadings drafted by lawyers.").

1

## RELEVANT FACTS[2]

Plaintiff was employed as an unloader at UPS's Hodgkins, Illinois, facility and was a member of Local 705. (R. 99, UPS's Facts ¶¶ 6, 7.) As such, his employment was governed by a collective bargaining agreement between UPS and Local 705 (the "CBA"). (*Id.* ¶ 8.) On April 1, 2005, an altercation between Plaintiff and UPS part-time supervisor, Teanna Johnson ("Johnson") occurred at the UPS facility. (*Id.* ¶ 12; R. 112, Pl.'s UPS Ans. at n.1.) Plaintiff and Johnson describe the details of this altercation differently. Johnson claims that after she confronted Plaintiff about using boxes that were against UPS policy, he told her to "shut the fuck up talking to me before I fuck you up." (R. 100-4, App. of Exs. to UPS's Facts, Johnson Decl. ¶ 7.) Plaintiff admits that he and Johnson had a verbal dispute but denies threatening her. (R. 112, Pl.'s UPS Ans. ¶¶ 16-17; R. 114, Pl.'s Local 705 Ans. ¶¶ 20-21.) Johnson claims that she "took [Plaintiff]'s threat seriously and reported the incident to a full-time supervisor." (R. 100-4, App. of Exs. to UPS's Facts, Johnson Decl. ¶ 9.) The parties agree that the altercation culminated with Plaintiff being taken to the security office and subsequently discharged for assaulting Johnson.

---

[2] The Court takes the undisputed facts from the parties' Local Rule 56.1 Statements. (R. 96, Local 705's Local Rule 56.1 Statement of Material Facts ("Local 705's Facts"); R. 99, UPS's Local Rule 56.1 Statement of Material Facts ("UPS's Facts").) As required by Local Rule 56.1(b)(3)(B), Plaintiff provided responses to Defendants' statements of fact. (*See* R. 112, Pl.'s Ans. to UPS's Facts ("Pl's UPS Ans."); R. 114, Pl.'s Ans. to Local 705's Facts ("Pl.'s Local 705 Ans.").) Plaintiff, however, did not provide Local Rule 56.1(b)(3)(C) statements of additional facts, but instead included a "Material Uncontested Facts" section in his summary judgment responses. (*See* R. 111, Pl.'s Mem. to Deny Local 705's Mot. for Summ. J. ("Pl.'s Union Resp."); R. 113, Pl.'s Mem. to Deny the UPS's Mot. for Summ. J. ("Pl.'s UPS Resp.").)

It is within the Court's discretion as to how strictly to apply Local Rule 56.1. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995); *see also Perry v. Bodman*, No. 05 C 3634, 2006 U.S. Dist. LEXIS 37225, at *6 (N.D. Ill. May 23, 2006) (finding it reasonable to apply Local Rule 56.1 less strictly with a *pro se* party). Defendants have adequately responded to these additional factual assertions, and therefore, the Court will consider them. (*See* R. 115, UPS's Reply; R. 116, Local 705's Reply.)

(R. 99, UPS's Facts ¶ 18; R. 96, Local 705's Facts ¶ 11; R. 112, Pl's UPS Ans. ¶ 19.) UPS has similarly terminated other employees who made threats of violence pursuant to the CBA provision against "fighting on the job." (R. 99, UPS's Facts ¶ 20.)

Through Local 705, Plaintiff filed a grievance challenging his termination. (R. 99, UPS's Facts ¶ 21.) On April 4, 2005, the grievance was presented by Local 705 representative Raymond Ordanas ("Ordanas") to UPS labor supervisor Christine Miernicki ("Miernicki"), but was not resolved. (*Id.* ¶ 22.) Pursuant to the CBA, the matter then proceeded to a local level grievance hearing, which resulted in a resolution impasse or deadlock. (*Id.* ¶ 23.) Subsequently, on April 15, 2005, a joint UPS/Local 705 grievance panel considered the matter. (R. 96, Local 705's Facts ¶ 18.) During the panel both Plaintiff and Johnson testified. (*Id.* ¶¶ 20-21.) The result, however, was once again deadlocked, and with the panel unable to make a decision Ordanas informed Plaintiff that the matter would go forward to arbitration. (*Id.* ¶¶ 22-23.)

On July 12, 2005, Local 705 attorney Marilyn Brassil ("Brassil") notified UPS that the union intended to take Plaintiff's grievance to arbitration. (*Id.* ¶¶ 24-25.) One year later, an arbitration hearing was scheduled for June 9, 2006, before Arbitrator John Rozner.[3] (R. 99, UPS's Facts ¶ 27.) On May 22, 2006, Plaintiff met with Brassil and Ordanas at Local 705's office to prepare for the arbitration. (R. 96, Local 705's Facts ¶ 27.) Local 705 contends that during this meeting, Brassil spoke to Plaintiff about the possibility of settling the case by giving up his claim for back pay and benefits in exchange for getting his job back. (*Id.* ¶ 28.) Plaintiff, however, denies that this settlement possibility was ever discussed. (R. 114, Pl.'s Local 705 Ans. ¶¶ 28-29.)

---

[3] The reason there was such a delay before the arbitration hearing was scheduled is unclear from the facts. However, it is UPS's position that "the Union delayed requesting arbitration for Lipsey's and other grievances." (R. 99, UPS's Facts ¶ 26.)

When the parties appeared before Arbitrator Rozner, UPS raised the issue of timeliness and asserted that Plaintiff's and other Local 705 grievances were not arbitratable given the union's delay in requesting arbitration.[4] (*Id.* ¶ 32; R. 99, UPS's Facts ¶ 28.) Although Local 705 sought to proceed with the merits of Plaintiff's grievance and stated its objection, Arbitrator Rozner agreed to a bifurcated hearing on the timeliness issue and continued the hearing on the merits of Plaintiff's claim until the arbitrability issue had been addressed.[5] (*Id.* ¶ 29; R. 96, Local 705's Facts ¶ 32; R. 101, Exs. in Supp. of Local 705's Mot. for Summ. J., Ex. F. 6/9/ 06 Tr. at 16:6-7.)

Plaintiff's case was scheduled to go back to arbitration on February 9, 2007. (R. 96, Local 705's Facts ¶ 36; R. 114, Pl.'s Local 705 Ans. ¶¶ 34, 36). The arbitration hearing, however, did not take place because in January 2007, UPS and Local 705 agreed to settle

---

[4] Plaintiff denies that the timeliness issue was ever addressed by Arbitrator Rozner and argues that the transcript is a "fabrication of the hearing held on June 9, 2006." (R. 113, Pl.'s UPS Resp. at 10; R. 111, Pl.'s Local 705 Resp. at 6.) (*See also* R. 112, Pl's UPS Ans. ¶ 29; R. 114, Pl.'s Local 705 Ans. ¶ 32.) The transcript submitted is certified by the transcriber as a true, complete, and correct transcription of the arbitration hearing. (R. 101, Exs. in Supp. of Local 705's Mot. for Summ. J., Ex. F. 6/9/06 Tr. at 26.) Plaintiff's account of the hearing, however, is not supported by any independent record citations. (*See* R. 112, Pl's UPS Ans. ¶ 29; R. 114, Pl.'s Local 705 Ans. ¶ 32.) Plaintiff's mere recitation of his version of the facts is "*ispso facto*, insufficient to create a material issue of fact." *Evans v. City of Chicago*, 434 F.3d 916, 933 (7th Cir. 2006); *see also Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) ("Self-serving statements contained in an affidavit will not defeat a motion for summary judgment when those statements are without factual support in the record."). Accordingly, the Court will disregard Plaintiff's argument because it lacks support in the factual record. *Witte v. Wisconsin Dept. of Corrections*, 434 F. 3d 1031, 1036-37 (7th Cir. 2006) (concluding that there was no genuine issue, in part, because plaintiff's responses to defendant's proposed facts merely repeated his contentions without evidentiary support).

[5] In addition to Plaintiff and Johnson, there was a witness to the incident, Charles Bills ("Bills"). (R. 96, Local 705's Facts ¶ 39.) Bills was present at the June 9, 2006, arbitration hearing and was prepared to testify on behalf of UPS. (*Id.*)

4

Plaintiff's grievance. (R. 99, UPS's Facts ¶ 32; R. 96, Local 705's Facts ¶¶ 49-50.) Under the terms of the settlement, UPS agreed that Plaintiff could return to work without back pay. (*Id.*)

When Brassil called Plaintiff to inform him of the settlement, Plaintiff objected, arguing that he was not consulted before the agreement was reached and that the terms were not in his best interest. (R. 96, Local 705's Facts ¶¶ 50-51; R. 114, Pl.'s Local 705 Ans. ¶ 32.) On January 22, 2007, Brassil sent Plaintiff a letter confirming the details of the grievance settlement. (R. 101, Exs. in Supp. of Local 705's Mot. for Summ. J., Ex. P.) The letter advised Plaintiff to contact Larry Keller ("Keller"), his union representative, to schedule his return to work and that he must return no later than January 29, 2007. (*Id.*) Plaintiff responded by letter dated February 7, 2007, reiterating his objections to the settlement, explaining that his priority was reinstatement with back pay and that his preference was to go forward with the scheduled arbitration.[6] (*Id.* at Ex. Q.) Plaintiff never returned to work at the UPS facility. (R. 99, UPS's Facts ¶ 34; R. 96, Local 705's Facts ¶ 56.)

## PROCEDURAL HISTORY

On May 8, 2007, Plaintiff filed a *pro se* complaint in this Court alleging violations of Section 301 of the LMRA. (R. 6, Compl.) On July 26, 2007, this Court appointed counsel to represent Plaintiff. (R. 5, Minute Entry.) On August 6, 2007, however, Plaintiff filed an "objection" to the Court's appointment of counsel, and counsel was granted leave to withdraw. (R. 8, Pl.'s Mot.; R. 12, Minute Entry.) On October 30, 2007, the Court dismissed individual

---

[6] Based on the previous meeting and off the record statements by Arbitrator Rozner, Plaintiff claims he was optimistic that he would receive a favorable ruling during the arbitration of his grievance. (*See* R. 101, Exs. in Supp. of Union's Mot. for Summ. J., Ex. Q) ("I refused the offer because the grievance settlement you've concocted gives me less than what I would receive from the arbitrator.").)

defendants Ordanas, Brassil, and Keller with prejudice, and Plaintiff subsequently amended his complaint. (R. 35, Minute Entry; R. 38, First Am. Compl.) On February 12, 2008, Plaintiff was granted leave to file a second amended complaint. (R. 60, Minute Entry; R. 61, Second Am. Compl.)

After filing his second amended complaint, Plaintiff requested the appointment of counsel on two additional occasions. (R. 69, Pl.'s Mot.; R. 78, Pl.'s Mot.) Both times this Court appointed counsel to assist Plaintiff. (R. 70, Minute Entry; R. 79 Minute Entry.) However, due to "[a] substantial disagreement on litigation strategy" and "irreconcilable differences," the appointed counsel were granted leave to withdraw pursuant to Plaintiff's motions, and Plaintiff is now proceeding *pro se*. (R. 76, Pl.'s Mot.; R. 79 Minute Entry; R. 85 Pl.'s Mot.; R. 88 Minute Entry.) In late January of 2009, UPS and Local 705 moved for summary judgment asserting that there is no genuine issue of material fact because Plaintiff's discharge was due to a terminable offense under the CBA and Local 705 fairly represented him. (R. 94, Mem. in Support of the Local 705's Mot. for Summ. J. ("Local 705's Mem.") at 4-7; R. 98, Mem. in Support of Def. UPS's Mot. for Summ. J. ("UPS's Mem.") at 4-5.)

## LEGAL STANDARDS

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law." *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In ruling on a motion for summary judgment, the Court must consider the facts in the light most favorable to the non-moving party,

drawing all reasonable inferences and resolving all doubts in the non-moving party's favor. *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). Once a moving party has met this burden, the non-moving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. The non-moving party must show that there is evidence upon which a jury reasonably could find for the plaintiff." *Wheeler*, 539 F.3d at 634.

## ANALYSIS

Plaintiff's claims are brought as a hybrid suit under Section 301 of the LMRA, therefore, to recover, he must prove both that UPS breached the CBA and that Local 705 breached its fiduciary obligation. *Bell v. DaimlerChrysler Corp.*, 547 F.3d 796, 804 (7th Cir. 2008) (citing *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 165 (1983)). Defendants assert that Plaintiff can prove neither of these requirements, and therefore they are entitled to summary judgment. (R. 94, Local 705's Mem. at 4; R. 98, UPS's Mem. at 4.)

Plaintiff first argues that Local 705 breached its duty of fair representation by failing to obtain his consent to the grievance settlement and failing to pursue arbitration "knowing that there was [sic] substantial possibility of success." (R. 61, Second Am. Compl. ¶ 30.) Plaintiff further contends that "Local 705 agreed to the settlement for the purpose of protecting the union's best interest," but not his own. (*Id.*; R. 114, Pl.'s Local 705 Ans. ¶ 32.) Defendants, however, argue that resolving the grievance by allowing Plaintiff to return to work without back pay was reasonable and did not constitute a breach of Local 705's duty of fair representation. (R.

7

94, Local 705's Mem. at 4-7; R. 98, UPS's Mem. at 7.)

The Seventh Circuit has determined that a union breaches the duty of fair representation "only if its actions are arbitrary, discriminatory, or in bad faith." *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003). To determine whether a breach has been established, each of these possibilities must be examined. *Id.* "A union's actions are arbitrary only if the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Id.* (citations omitted). This is an "extremely deferential standard," and precludes the Court from substituting its judgment for that of the union, "even if, with hindsight, it appears the union could have made a better call." *Matthews v. Milwaukee Area Local Postal Workers Union, AFL-CIO*, 495 F.3d 438, 441 (7th Cir. 2007). Moreover, the union is not obliged to take all grievances to arbitration. *Id.* at 442 ("a union does not breach its statutory duty of fair representation . . . merely because it settled the grievance short of arbitration") (quoting *Vaca v. Sipes*, 386 U.S. 171, 191 (1967)). The union has discretion "to act in consideration of such factors as the wise allocation of its own resources, its relationships with other employees, and its relationships with the employer." *Neal*, 349 F.3d at 369.

In this case, Local 705 settled Plaintiff's grievance before arbitration. (R. 99, UPS's Facts ¶ 32; R. 96, Local 705's Facts ¶¶ 49-50.) If, after the timeliness issue had been resolved, the matter had proceeded to arbitration, the relevant inquiry would have been whether Plaintiff engaged in conduct sufficient to justify discharge. Assuming that both Plaintiff and Johnson testified, each would have provided a different account of the altercation requiring the Arbitrator to make a credibility determination. (*See* R. 96, Local 705's Facts ¶¶ 20-21; R. 114, Pl.'s Local 705 Ans. ¶¶ 20-21.) Moreover, UPS was prepared to present Bills, a UPS employee and

disinterested witness, in support of its version of events. (R. 96, Local 705's Facts ¶ 39.) Therefore, there was a significant risk that the Arbitrator would have determined that the discharge was justified and Plaintiff would not have received any relief. Local 705 considered the risk and based on its experience with similar matters, determined that settlement was most appropriate in this case. (*Id.* ¶ 49.) The Court finds that Local 705's decision to secure Plaintiff's future employment in exchange for back pay was reasonable, under the circumstances. *See Matthews*, 495 F.3d at 442 (union made reasonable decision that settling plaintiff's grievance was an appropriate alternative to arbitration). Given the risks involved, the Court finds it was not "irrational" for Local 705 to settle rather than arbitrate Plaintiff's grievance, and therefore its decision was not arbitrary. *Neal*, 349 F.3d at 369.

Next, Plaintiff argues that pursuant to the CBA he should have been allowed to continue working while his grievance was processing, and that Local 705 acted "in bad faith" when Ordanas "intentionally misinformed and [sic] mislead Plaintiff to believe that [he] couldn't work during the grievance proceeding." (R. 111, Pl.'s Local 705 Resp. at 6.) Plaintiff claims that Local 705's motive was "[t]o avoid the work involved in enforcing [his] right under Article 7 of the CBA." (*Id.*) The Seventh Circuit has explained that unlike the objective standard for arbitrariness, the test for whether a union's actions are discriminatory or in bad faith "calls for a subjective inquiry and requires proof that the union acted (or failed to act) due to an improper motive." *Neal*, 349 F.3d at 369.

The record is void of any evidence (and Plaintiff does not argue) that Local 705's decision to settle Plaintiff's grievance was discriminatory. Therefore, the Court will examine if Local 705 acted in bad faith. Courts have found that a union demonstrates bad faith when it fails

9

to pursue a grievance for personal reasons or in retaliation of a union members political affiliation. *Spears v. Local No. 134, IBEW*, No. 04 C 7040, 2006 U.S. Dist. LEXIS 29713, at *19 (Apr. 25, 2006). In addition, dropping a potential meritorious grievance because of a concern that it might result in future lawsuits against the union constitutes bad faith decision making. *Id.*

Article 7 of the CBA provides, in part, that "an employee to be discharged or suspended shall be allowed to remain on the job, without loss of pay unless and until the discharge or suspension is sustained under the grievance procedure." (R. 101, Exs. in Supp. of Local 705's Mot. for Summ. J., Ex. B. CBA at 13.) This provision, however, is limited by other sections of the CBA to circumstances that do not involve "cardinal infractions" such as "fighting on the job." (*Id.* at 13, 125-26.) Local 705 argues that based on the circumstances of Plaintiff's discharge and its interpretation of the provisions, the CBA prevented Plaintiff from returning to work during the grievance period. (R. 116, Local 705's Reply at 10.)

The Court finds that Local 705's interpretation was reasonable. The record reflects that Johnson took Plaintiff's alleged threat seriously and that UPS has terminated other employees who made threats of violence for "fighting on the job" pursuant to Article 54 of the CBA. (R. 100-4, App. of Exs. to UPS's Facts, Johnson Decl. ¶¶ 7-9; R. 99, UPS's Facts ¶ 20.) Although Local 705 challenged Plaintiff's termination on the basis that a disciplinary action less severe than discharge was appropriate under the circumstances, it was reasonable for the union to interpret the CBA as an impediment that prevented Plaintiff from working while the grievance was processed. *See Matthews*, 495 F.3d at 441. Moreover, Plaintiff offers no evidence that Local 705 acted on any basis other than a good faith interpretation of the CBA. *See Wheeler*, 539

F.3d at 634. Accordingly, there is no basis in the record to conclude that Local 705 acted with an improper motive, and therefore, Plaintiff's argument fails.

The record, viewed in the light most favorable to Plaintiff, would not permit a reasonable fact finder to conclude that Local 705's actions were arbitrary, discriminatory, or in bad faith. Therefore, Local 705 did not breach its duty of fair representation. Without a valid claim against Local 705, the Court need not consider whether UPS violated its CBA. *Bell*, 547 F.3d at 804 (claims under Section 301 of the LMRA, against employers for breaches of collective bargaining agreements, are viable only if the plaintiff can show that the union breached its duty of fair representation). Therefore, the Court finds that both Local 705 and UPS are entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, Local 705 and UPS's motions for summary judgment (R. 93, R. 97) are GRANTED. The Clerk of the Court is directed to enter judgment in favor of Teamsters Local Union 705 of Illinois, Inc. and United Parcel Service, Inc. and against Kenneth Lipsey.

Entered: _/s/ Ruben Castillo_

Judge Ruben Castillo
**United States District Court**

**Dated: May 27, 2009**